MARY L. BRANDON, a *feme sole,* doing business as BRANDON TRANSFER & STORAGE CO., v. LEONARD W. LICHTY.

182 So. 897.
Opinion Filed July 19, 1938.

*E. M. Baynes,* for Plaintiff in Error;

*Buford & Prescott,* for Defendant in Error.

BUFORD, J.—Lichty delivered, at Sioux City, Iowa, a certain lot of furniture to Brady Transfer & Storage Co. to be delivered to Lichty at West Palm Beach, Florida. Brady Transfer & Storage Co. accepted the furniture for delivery by motor truck under a purported agreement contained in a letter from Brady Transfer & Storage Co. to Lichty, as follows:

"Brady Transfer & Storage Co.
Modern—Fireproof—Secure
Freight Forwarders and Distributors
Warehousemen, Expert Packers
Household Removals

"Central at Sixteenth
Fort Dodge, Iowa
Sioux City, Iowa
Dec. 15, 1936

"J. J. Brady, President.

"We are not Common Carriers and reserve the right to accept or refuse any order for the transportation of goods.

"Mr. Leonard W. Lichty,
"3000 Pierce St.,
"Sioux City, Ia.
"Dear Sir:

"In accordance with our understanding on moving from Sioux City to West Palm Beach, Florida, the price is $293.43, and if you decide to go to Miami, which is in the neighborhood of 70 to 90 miles further, the price will be $302.81.

"You may deduct 5% for packing on the above, namely, West Palm Beach $278.76 or Miami $287.76. It is also agreed that we will haul this furniture to Fort Dodge and hold it a reasonable length of time for you to get to Florida and find your home and then wire us and we will haul it down. There will be no charge for storage, but in the event that it is held in our warehouse an unreasonable length of time, there will then be a small storage charge. Also in the event that there will be more furniture put on this load than was originally agreed on our tally, there will be an extra charge.

"We trust that this is the information desired and we wish at this time to thank you for this order and will assure you that it will be taken to West Palm Beach in the very least time possible and you can be assured that it will have the best possible care and for your information, we carry plenty of insurance to protect this load.

"Again assuring you that this load is appreciated, we remain

"Yours truly,

"B. E. DUNLAP, Manager S. C. Office.

"BED/L

"cc: Ft. Dodge Office

"Members of Iowa Warehousemens Association
American Warehousemens Association
National Furniture Warehousemens Association."

By stipulation it appears that Brady Transfer & Storage Co. was at the time of the receipt of the furniture an Interstate Carrier under the Federal Motor Carrier Act of 1935; that the published rates at said time for hauls of 1,101 to 1,150 cubic feet, inclusive, for a distance of 1,770 miles was $552.47; that Brady Transfer & Storage Co. delivered the furniture to Allied Van Lines, Inc., at Sioux City, Iowa, and that company transported the same by motor truck in interstate transportation to West Palm Beach, Florida, and tendered the same to Lichty on condition that Lichty pay the amount due for freight under the tariffs fixed by the Interstate Commerce Commission.

The record shows that the amount due for freight under the tariffs fixed and published by the Interstate Commerce Commission was $552.47. Lichty refused to pay the freight demanded. Allied Van Lines, Inc., stored the shipment in the warehouse of defendant for delivery upon the payment of the freight demanded. Lichty demanded delivery of

the shipment to him on the payment of the amount named in the letter from Brady Transfer & Storage Co. to him.

Delivery being refused, Lichty filed replevin action.

The sole question is whether the amount of freight which Lichty was required to pay was the sum named in the letter, *supra,* or the amount fixed by the published tariffs of Interstate Commerce Commission.

The lower court directed verdict in favor of defendant for the amount named in the letter.

We must hold this to be error.

If Brady Transfer & Storage Co. was a carrier in Interstate Commerce by motor, it was without power to make a contract to transport any shipment of goods in interstate carriage for any charge of freight either more or less than that fixed by the published tariffs of Interstate Commerce Commission. Section 317 (b) of the involved 1935 Transportation Act provides:

"(b) Deviation from rates and regulations enumerated in tariff forbidden; undue preferences. No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares and charges specified in the tariffs in effect at the time; and no such carrier shall refund or remit in any manner or by any device directly or indirectly, or through any agent or broker or otherwise, any portion of the rates, fares or charges so specified, or extend to any person any privileges or facilities for transportation in interstate or foreign commerce except such as are specified in its tariffs: *Provided,* That the provisions of Sections 1 (7) and 22 (1) of this title shall apply to common carriers by motor vehicles subject to this chapter."

In State v. A. C. L. R. R. Co., 95 Fla. 14, 116 Sou. 48, we held:

"The dominating purpose of the Interstate Commerce Act was to secure conformity to prescribed standards through examination and appreciation of the complex facts of transportation by the body created for that purpose, and as the Supreme Court of the United States has frequently said it would be destructive of the system of regulation defined by the Interstate Commerce Act if the Court without the preliminary action of the Interstate Commerce Commission were to undertake to pass upon the administrative questions which the Act has primarily confided to the Commission. Minnesota Rate Cases (Simpson v. Shepart) 230 U. S. 352, 33 Sup. Ct. Rep. 729; Mitchell Coal & Coke Co. v. Penna Railway Co., 230 U. S. 247, 33 Sup. Ct. Rep. 916; Texas & Pacific Ry. Co. v. American Tie & Timber Co., 234 U. S. 138, 34 Sup. Ct. Rep. 885. In all these cases and many others we have examined on this question the preservation of uniformity and the prevention of discrimination in rates in interstate commerce, as defined in the Interstate Commerce Act, was the controlling principle leading the Court to its conclusion."

Contracts in violation of the Interstate Commerce Commission Act are void and the carrier is not estopped from asserting the legality of that Act and the illegality of a contract for shipment at a rate different from that fixed by the Interstate Commerce Commission. See Pa. R. Co. v. Cameron, 33 A. L. R. 1281, 280 Pa. 458, 124 Atl. 638, where it is said:

"A carrier cannot bind itself by attempting to give a receipt in full for less freight than the amount established by the Interstate Commerce Commission for the service rendered."

Also see Sou. R. Co. v. Prescott, 240 U. S. 632, 60 L.

Ed. 836; Armour Packing Co. v. United States, 209 U. S. 56, 52 L. Ed. 681; I. C. R. Co. v. Henderson Elevator Co., 226 U. S. 441, 57 L. Ed. 290.

It follows that the judgment must be reversed and the cause remanded for a new trial upon the sole issue of the assessment of damages.

So ordered.

Reversed and remanded.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., not participating.