385 So.2d 124 (1980)
CORPORATION DE GESTION STE-FOY, INC., Appellant,
v.
FLORIDA POWER AND LIGHT COMPANY, Appellee.
No. 79-1802.
District Court of Appeal of Florida, Third District.
June 17, 1980.
*125 Greenberg, Traurig, Hoffman, Lipoff, Quentel & Wolff and Richard G. Garrett and Sue M. Cobb, Miami, for appellant.
Steel, Hector & Davis and Joseph P. Klock, Jr. and Gerry S. Gibson, Miami, for appellee.
Before BARKDULL, HUBBART and SCHWARTZ, JJ.
SCHWARTZ, Judge.
The appellant, Corporation De Gestion Ste-Foy, Inc., a Canadian corporation which was the plaintiff below, owns an apartment building called the Beekman Towers in Surfside, Florida. In March, 1979, the Florida Power & Light Company (FPL) informed it that an employee had misread the master electric meter at its premises between January, 1976 and February, 1979. As a result, FPL had underbilled and the appellant had underpaid some $99,000 for electricity furnished during that period. Upon the power company's demand for payment of that amount, the appellant brought this action against it in the Dade County Circuit Court. The complaint did not allege that the Beekman Towers had not actually consumed the $99,000 worth of electricity in question. It sought, however, a declaratory judgment that the power company was estopped from collecting the amounts it had negligently underbilled or that an accord and satisfaction of the claim had been effected by the payment of FPL's successive monthly billings in the interim. As a corollary, the plaintiff prayed for an injunction precluding the power company from shutting off its electricity for the non-payment of the $99,000. The trial judge dismissed the complaint and the plaintiff has appealed.
We affirm on the ground that the complaint failed to state a cause of action.[1] The thrust of the plaintiff's complaint was to relieve it of the obligation to pay for some of the electricity it admittedly received, thus permitting it to pay less for the same service than other customers to whom FPL had forwarded accurate bills. The established *126 law of the state, however, as expressed in Section 366.03, Florida Statutes (1977) is that
"[N]o public utility shall make or give any undue or unreasonable preference ... to any person or locality ..."
The public policy embodied in this and similar statutory provisions precludes a business whose rates are governmentally regulated from granting a rebate or other preferential treatment to any particular individual. Accordingly, it is universally held that a public utility or common carrier is not only permitted but is required to collect undercharges from established rates, whether they result from its own negligence or even from a specific contractual undertaking to charge a lower amount. E.g., Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915); W.S. Dickey Clay Manufacturing Company v. Corder, 310 F.2d 764 (5th Cir.1962), cert. dismissed, 373 U.S. 906, 83 S.Ct. 1294, 10 L.Ed.2d 197 (1963); Butler v. Bell Oil & Refining Co., 70 Cal. App.2d 728, 161 P.2d 559 (1945). In Brandon v. Lichty, 133 Fla. 520, 182 So. 897 (1938) the supreme court held that a carrier could not be estopped or otherwise barred from recovering the full amount of freight charges indicated in the applicable ICC tariff, notwithstanding its express agreement to transport the goods in question for less. The Brandon case reflects the general rule that the equitable doctrine of estoppel cannot be employed to effect results which are unlawful or otherwise contrary to public policy. E.g., Enderby v. City of Sunrise, 376 So.2d 444 (Fla. 4th DCA 1979); United Sanitation Services of Hillsborough, Inc. v. City of Tampa, 302 So.2d 435 (Fla. 2d DCA 1974).
Applying these principles to the precise situation involved in this case, three well-reasoned decisions from other jurisdictions have squarely held that a customer of a public utility simply has no defense  either of estoppel or accord and satisfaction  to charges for services which were actually furnished but which had previously been negligently underbilled. West Penn Power Co. v. Nationwide Mutual Ins. Co., 209 Pa. Super. 509, 228 A.2d 218 (1967);[2]Chesapeake and Potomac Telephone Company of Virginia v. Bles, 218 Va. 1010, 243 S.E.2d 473 (1978); Wisconsin P. & L. Co. v. Berlin Tanning & Mfg. Co., 275 Wis. 554, 83 N.W.2d 147 (1957).[3] We entirely agree with and endorse these decisions.
Affirmed.
NOTES
[1] The trial court based its order of dismissal on the alternative grounds that (a) the Public Service Commission had exclusive jurisdiction and the circuit court therefore lacked subject matter jurisdiction over the controversy and (b) even if the court possessed concurrent jurisdiction, it would defer to the PSC's expertise under the "primary jurisdiction" doctrine. Our affirmance of the order below for another reason, Stuart v. State, 360 So.2d 406 (Fla. 1978); Stone v. Rosen, 348 So.2d 387 (Fla. 3d DCA 1977), is not to be taken as an approval of these conclusions. See, contra, State ex rel. Railroad Commissioners v. Southern Telephone and Construction Co., 65 Fla. 270, 61 So. 506 (1913); Florida Water & Utilities, Inc. v. Cutler Ridge Associates, 376 So.2d 273 (Fla. 3d DCA 1979).
[2] The West Penn case separately treats and properly rejects the plaintiff's argument that the accord and satisfaction doctrine applies to this situation. It is apparent that the plaintiff's past payment of the erroneous monthly bills could not effect an "accord," because no claim was then either unliquidated or in dispute. 10 Fla.Jur.2d, Compromise, Accord, and Release § 5 (1979). Instead, the parties were simply laboring under a mistake as to the sums actually due. FPL was therefore authorized subsequently to recover the correct amounts. Maryland Casualty Co. v. Krasnek, 174 So.2d 541 (Fla. 1965); see Ferguson v. Cotler, 382 So.2d 1315 (Fla. 5th DCA 1980).
[3] The plaintiff's estoppel contention is based on the assertion that if it had known the full extent of the cost of electricity, it would have passed these expenses on to its tenants either through increased rentals or by an additional specific charge. The Wisconsin case rejects just such a claim, citing several decisions which involve the a fortiori situation in which the customer of a common carrier has expended non-refundable moneys out-of-pocket because of an improper undercharge, but was nonetheless required thereafter to pay the carrier the full amount. Illinois Central R. Co. v. Henderson Elevator Co., 226 U.S. 441, 33 S.Ct. 176, 57 L.Ed. 290 (1913); Texas & Pacific R. Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011 (1906); Chicago & N.W.R. Co. v. J.I. Case Plow Works, 173 Wis. 237, 180 N.W. 846 (1921). The sole authority cited by the plaintiff on the estoppel issue, George W. Davis & Sons, Inc. v. Askew, 343 So.2d 1329 (Fla. 1st DCA 1977), holds that the state may be estopped from belatedly asserting a tax liability upon a party which had essentially been acting as a collecting agent for taxes actually paid by its customers. The Davis case has no application to this one, in which the plaintiff is the sole entity liable to pay for the electricity and claims only the loss of a speculative opportunity to pass along or to recapture those amounts.