HENDRY, Judge.
Defendant Wash-Bowl Vending Co., Inc. (Wash-Bowl) appeals a final judgment in favor of plaintiff No. 3 Condominium Association, Village Green, Inc. (Association).
The relevant facts may be briefly stated. On January 5, 1982, the Association agreed to lease certain common area space to Wash-Bowl for Wash-Bowl to install and maintain coin-operated laundry machines. The lease was for seven years and gave Wash-Bowl options to renew for a period of up to twenty-one years. Wash-Bowl did not install new washers and dryers in the condominium, but instead purchased from the condominium developer the laundry machines which were already in place. The lease provided for Wash-Bowl to pay the Association 50% of the gross revenue derived from the operation of the machines. *1309 In addition, Wash-Bowl contracted to keep the laundry machines in good working order and to inspect them periodically, no less than once a month. Wash-Bowl’s washers and dryers were to be the only laundry machines available to the unit owners, as its lease with the Association gave it exclusive rights and the unit owners were prohibited from having laundry machines in their individual units. The laundry machines were solely for the use of condominium residents.
The lease did not specify what the cost would be to operate the machines. However, it did provide that Wash-Bowl alone would set the coinage rate. At the time the contract was entered into, the coinage rate was 50 cents. Shortly thereafter, Wash-Bowl increased the rate to 60 cents. When a representative from the Association complained about the increase, he was told that there would be no further increases for a long time. In December, 1983, Wash-Bowl notified the Association that it was raising the coinage rate from 60 cents to 75 cents. An Association representative again protested the increase to Wash-Bowl. The representative was informed by the company that it intended to raise the coinage rate at its discretion.
It was these increases in coinage rates that propelled the Association to seek a declaratory judgment against Wash-Bowl relative to the laundry space lease. The complaint, consisting of two counts, was filed May 4, 1984. The first count alleged that the lease agreement violated the provisions of section 718.3025, Florida Statutes (1985), and the second count alleged that the lease agreement was in violation of section 718.302(2), Florida Statutes (1983).
The case was tried non-jury. Evidence was presented solely on count I, as the trial court declined to hear any evidence on the second count. The court ruled that the lease agreement was unenforceable as it was in violation of Chapter 718 of the Condominium Act, and entered a final judgment to that effect.
The issues presented for our consideration under count I are: (1) whether section 718.3025, Florida Statutes (1985), applies to laundry space leases; (2) whether WashBowl complied with the statute as much as was practicable given the purported distinctions between a laundry space lease and an agreement for operation, maintenance or management; (3) whether the Association’s acceptance of the lease for over two years prohibits it from contesting the lease’s compliance with the statute; and (4) whether section 718.3025, Florida Statutes, is unconstitutional on its face and as applied.
We will consider the issues raised seri-atim. Section 718.3025, Florida Statutes, places certain minimum requirements on contracts executed between condominium associations and parties contracting to provide for the “operation, maintenance, or management of a condominium association or property serving the unit owners.” No such contract shall be valid or enforceable, unless the contract:
(a) Specifies the services, obligations, and responsibilities of the party contracting to provide maintenance or management services to the unit owners.
(b) Specifies those costs incurred in the performance of those services, obligations, or responsibilities which are to be reimbursed by the association to the party contracting to provide maintenance or management services.
(c) Provides an indication of how often each service, obligation, or responsibility is to be performed, whether stated for each service, obligation, or responsibility or in categories thereof.
(d) Specifies a minimum number of personnel to be employed by the party contracting to provide maintenance or management services for the purpose of providing service to the association.
(e) Discloses any financial or ownership interest which the developer, if the developer is in control of the association, holds with regard to the party contracting to provide maintenance or management services.
§ 718.3025(1), Fla.Stat. (1985).
Wash-Bowl contends that the requirements of the statute do not logically relate to laundry space leases. We do not *1310 agree. Although no Florida cases have interpreted section 718.3025, Florida Statutes, we believe laundry space leases fall under its purview. First, it seems to be clear that the language “property serving the unit owners” covers washers and dryers which are available for use by all owners. § 718.3025(1), Fla.Stat. The laundry equipment is utilized solely by the unit owners of the condominium and is located in designated common areas. Residents are prohibited from having laundry equipment in their units and so have no other choice but to use Wash-Bowl’s equipment if they want to do their laundry on the premises. Further, the “maintenance or management” of the washers and dryers is Wash-Bowl’s responsibility. Wash-Bowl has the duty of inspecting the machines periodically, keeping them in good repair and collecting from the coin boxes. Next, we do not find it illogical to require the holder of a laundry space lease to specify the services to be performed, those costs incurred in the performance of those services, how often each service is to be performed and the number of personnel to be employed. Finally, we note that the Fourth District Court of Appeal in interpreting statutes [§ 711.13(4), Fla.Stat. (1973), and its successor, § 711.66(5), Fla. Stat. (1975)], which contain similar language protective of condominium associations, has held that contracts to supply and service laundry equipment fall under such statutes.[1] Wash and Dry, Inc. v. Bay Colony Club Condominium, Inc., 368 So.2d 50 (Fla. 4th DCA 1979).
Second, we are asked to decide whether Wash-Bowl complied with the statute as much as was practicable given the differences between a laundry space lease and a contract for the operation, maintenance or management of property serving the unit owners. Wash-Bowl failed to comply with section 718.3025(l)(b), (c), and (d), Florida Statutes. It failed to specify “those costs incurred in the performance of those services ... which are to be reimbursed by the association.” § 718.-3025(l)(b). The lease violated this provision by failing to specify a coinage rate. Although Wash-Bowl contends it received no reimbursement from the Association, in fact, Wash-Bowl’s reimbursement from the Association was 50% of the revenues derived from the use of the machines. WashBowl also failed to specify how often each service was to be performed. § 718.-3025(l)(e), Fla.Stat. We see no reason why preventive maintenance and coin collection schedules could not be prescribed by agreement. Lastly, Wash-Bowl failed to specify the minimum number of personnel to be employed to perform these services. § 718.3025(l)(d), Fla.Stat. Since no valid explanation is offered by Wash-Bowl as to why the nature of laundry space leases makes it impracticable to conform to these requirements, Wash-Bowl’s contention that it complied with the statute to the extent it was feasible to do so, fails.
The third issue for our consideration is whether the Association’s acceptance of the benefits of the lease for over two years establishes a waiver of any objections to the lease, estops the Association from challenging the validity of such lease, or effects a ratification of the lease.
Waiver is the intentional relinquishment of a known right. Gilman v. Butz- *1311 loff, 155 Fla. 888, 22 So.2d 263 (1945); Continental Real Estate Equities, Inc. v. Rich Man Poor Man, Inc., 458 So.2d 798 (Fla. 2d DCA 1984); O’Brien v. O’Brien, 424 So.2d 970 (Fla. 3d DCA 1983). However, there can be no waiver without knowledge, express or implied, of that which is being waived. Gulf Life Insurance Co. v. Green, 80 So.2d 321 (Fla.1955); Guaranty National Insurance Co. v. Pachivas, 458 So.2d 306 (Fla. 3d DCA 1984). In the case at bar, no evidence was offered that the Association had any knowledge of the lease’s noncompliance with section 718.-3025, Florida Statutes, until such time as it brought suit. Mere time delay is insufficient to support a defense of waiver. O’Brien v. O’Brien, 424 So.2d at 971; Mercede v. Mercede Park Italian Restaurant, Inc., 392 So.2d 997 (Fla.4th DCA 1981). Therefore, we find that the Association did not waive its right to object to the lease under section 718.3025, Florida Statutes.
Whether the Association’s acceptance of the benefits of the lease for over two years estops it from raising the invalidity of the lease under section 718.3025, Florida Statutes, is our next question. [Emphasis supplied.] The general rule is that estoppel cannot be employed to effect results which are forbidden by law or contrary to public policy. Travelers Insurance Co. v. Spencer, 397 So.2d 358 (Fla. 1st DCA 1981); Corporation de Gestion Ste-Foy, Inc. v. Florida Power & Light Co., 385 So.2d 124 (Fla. 3d DCA 1980). The cases cited by Wash-Bowl on this issue are distinguishable from the instant case.[2] In each of those cases the court estopped a party who had signed a lease, or a successor to a party who had signed the lease, from asserting the invalidity of the lease where the lease lacked subscribing witnesses which were required by law. In those cases the public policy behind the statute was not impaired since no question was raised as to whether the party had, in fact, signed the lease.[3] The claimed invalidity was merely technical. In the case at bar, the public policy behind section 718.3025, Florida Statutes, to insure that certain condominium association contracts meet minimum standards, would be totally eroded if the condominium association could be estopped from asserting the contract’s failure to conform to the statute.
We further find that the Association’s conduct did not effect a ratification of the lease. Ratification is the express or implied adoption by a person of an act or contract entered into in his behalf by another without authority. Port Largo Club, Inc. v. Warren, 476 So.2d 1330 (Fla. 3d DCA 1985); Carolina-Georgia Carpet & Textiles, Inc., v. Pelloni, 370 So.2d 450 (Fla. 4th DCA 1979); G & M Restaurants Corp. v. Tropical Music Service, Inc., 161 So.2d 556 (Fla. 2d DCA 1964). Since there is no allegation that a third party without authority entered into the lease on the Association’s behalf, ratification is inapposite to the facts of the case.
Finally, we do not find it necessary to respond in detail to the question whether section 718.3025, Florida Statutes, is unconstitutional on its face and as applied. Condominiums are creatures of statute and are subject to the control and regulation of the legislature. The legislature has broad discretion in fashioning remedies to protect the interests of all parties concerned. Century Village, Inc. v. Wellington E, F, K, L, H, J, M, & G, Condominium Association, 361 So.2d 128 (Fla.1978); cf. Schlytter v. Baker, 580 F.2d 848 (5th Cir.1978) (Florida statute prohibiting escalation clauses in condominium leases when such clauses are keyed to national commodity or consumers’ price index had legitimate objective of curbing inflation and of control *1312 ling abuse in condominium trade, and thus was constitutional).
For the foregoing reasons and based upon the authorities cited, the final judgment of the trial court is affirmed.
Affirmed.

. Section 711.13(4), Florida Statutes (1973), provides in part:
“Any initial or original contracts first entered into by the condominium association or its fiduciaries or appointees for maintenance, management, or operation of condominium property shall be subject to cancellation at any time subsequent to the time any individual unit owners assume control of their association_” (emphasis supplied).
Its successor, section 711.66(5), Florida Statutes (1975), provides in part:
Any grant or reservation made by a declaration or cooperative document, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, that provides for operation of a condominium or cooperative or for maintenance, management, or operation of condominium or cooperative property or of property serving the unit owners of a condominium or cooperative- shall be fair and reasonable and may be canceled by unit owners other than the developer under the following circum-stances_(emphasis supplied).

. Gill v. Livingston, 158 Fla. 577, 29 So.2d 631 (1947); Bodden v. Carbonell, 354 So.2d 927 (Fla. 2d DCA 1978); Taylor v. Rosman, 312 So.2d 239 (Fla. 3d DCA 1975); Arvanetes v. Gilbert, 143 So.2d 825 (Fla. 3d DCA 1962).

. "The manifest object of requiring an attestation of subscribing witnesses is to enable the grantee to prove the execution by the grantor of the deed, and to show the circumstances attending the sealing and delivery.” Richbourg v. Rose, 53 Fla. 173, 44 So. 69, 72 (1907). "The real purpose of the witness is to facilitate proof of the execution of the document." Carmody, Effect of Failure to Witness Deed, 15 Fla.L.J. 364 (1941).