ERVIN, Judge,
concurring in part and dissenting in part.
I concur with the majority’s opinion in reversing that part of the lower court’s *375 final judgment which had determined that JEA could not recover for undercharges accruing subsequent to February 19, 1985, but dissent to that portion of the opinion affirming the trial court’s judgment precluding JEA from pursuing later undercharges which had accrued as of February 19,1985. My disagreement with the majority’s opinion, holding that an accord and satisfaction had been achieved between the parties as to all underbillings occurring through February 19, 1985, is two-fold: (1) No competent, substantial evidence supports the trial court’s determination that an accord and satisfaction was reached as to the subsequent amount in dispute, and (2) even assuming alternatively that sufficient evidence does support such a finding, the defense of accord and satisfaction raised by a customer of a public utility is contrary to established public policy prohibiting a public utility from giving any undue or unreasonable preference or advantage to any person.
The facts leading to the parties’ stipulation entered in March 1985, agreeing that Draper’s accounts would be paid in full through February 19,1985, reflect that the dispute first arose during the latter part of 1984 when Draper’s contested the accuracy of JEA’s billing statement of December 7, 1984. The dispute was finally resolved on March 7, 1985, when JEA sent a letter to Draper’s advising that the balances on all three of its water accounts disclosed a total sum outstanding of $21,967.57, and that once that amount was paid, Draper’s would have paid all its accounts in full through the February 19, 1985 meter readings. In March, Draper’s forwarded two separate checks to JEA representing the figure requested by JEA, with a notation on one that the check was for payment in full through February 19, 1985, for all water and sewer charges consumed at Draper’s Egg and Poultry Business. This check, as reflected in the majority’s opinion, was accepted and deposited by JEA. Thereafter, on November 6, 1985, JEA notified Draper’s that a substantial billing error had occurred involving two of the customer’s accounts, resulting in an underbilling of $297,303.85 during the period from December 16, 1983 through October 17, 1985.
It is clear from the record that there were two different amounts in dispute between the parties and that the accord reached by the parties in March 1985 did not and could not affect the later disputed amount which did not come into existence until after the parties’ agreement. See Hannah v. James A. Ryder Corporation, 380 So.2d 507, 509 (Fla. 3d DCA 1980) (“The defense of accord and satisfaction essentially involves the issue of whether the parties mutually intended to effect a settlement of an existing dispute by entering into a superseding agreement.” (e.s)). Before an accord and satisfaction may occur, it is necessary for the agreement to be based upon a mutual meeting of the minds and, in the absence of such evidence, no determination can be made that an agreement was reached. See State Road Department v. Houdaille Industries, Inc., 237 So.2d 270, 274 (Fla. 1st DCA 1970). Obviously, in the case at bar, there were two separate disputes between Draper’s and JEA: the first occurring in December 1984 when Mr. Draper initiated the inquiry resulting in the agreement of March 1985, and the second in November 1985, originating with JEA by its letter to Draper’s advising of recently discovered under-billings. Clearly there can be no accord and satisfaction if all claims are not incorporated within the agreement of the parties. See Jobear, Inc. v. Dewind Machinery Company, 402 So.2d 1357, 1358 (Fla. 4th DCA 1981).
Although the facts in West Penn Power Company v. Nationwide Mutual Insurance Company, 209 Pa.Super. 509, 228 A.2d 218 (1967), are distinguishable from those in the instant case, the rule in West Penn is nevertheless applicable in requiring that there be a dispute between a customer and a public utility company over the amount of the bill involved before an accord and satisfaction can arise. In West Penn, the utility company had brought an action for the difference between the amount billed and paid and the amount that should have been billed and paid based upon the quantities of electricity supplied *376 to its customer during a 31-month period. In rejecting the customer’s defense of accord and satisfaction, the court held that the amounts paid by the customer, by checks bearing the language that the utility’s endorsement would constitute a receipt and release of all accounts claimed in the statement, and the utility’s later acceptance of such payments, involved no dispute and that the dispute only arose as a result of a rebilling at the end of the 31-month period. The court observed: “A dispute is an essential element of accord and satisfaction. There was no dispute here over an unliqui-dated claim and the appellee is not es-topped from correcting an error in billing.” 228 A.2d at 220. In contrast to West Penn, the evidence at bar discloses a dispute between the parties during a substantial portion of the time that JEA later based its claim of underbilling charges — from December 16, 1983 through February 19, 1985. Nevertheless, at the time the accord was reached in March 1985, there was clearly then no dispute regarding billing errors uncovered nearly eight months thereafter. Consequently, no evidence was presented from which the lower court could base its finding that the parties mutually intended to reach an accord as to all under-billing errors occurring through February 19, 1985.
Alternatively, even if it can be reasonably concluded that JEA’s acceptance of the two checks in the amount of $21,967.57 reflected an agreement by it that such amount was payment in full through the meter reading of February 19,1985, for all water and sewer services theretofore used at Draper’s business, the Third District Court of Appeal’s opinion in Corporation De Gestion Ste-Foy, Inc. v. Florida Power and Light Company, 385 So.2d 124, 126 (Fla. 3d DCA 1980), clearly holds that a customer’s defense of accord and satisfaction, as applied to a public utility’s negligent billing errors for services that were actually received by the customer, is barred by overriding public policy interests:
The public policy embodied in this [e.g., Section 366.03, Florida Statutes (1977)] and similar statutory provisions precludes a. business whose rates are gov-emmentally regulated from granting a rebate or other preferential treatment to any particular individual. Accordingly, it is universally held that a public utility or common carrier is not only permitted but is required to collect undercharges from established rates, whether they result from its own negligence or even from a specific contractual undertaking to charge a lower amount.
(emphasis supplied)
In the present case, no contention has been made by the customer that the service, as reflected in JEA’s additional billings, had not actually been furnished to it. As observed by the Superior Court of Pennsylvania in West Penn:
We agree with the court below that the only issue is whether the appellant has paid in full for electricity furnished it by the utility. A utility can only charge the customer the lawful rate as tariffed. It cannot make a special contract with the customer. There can be no favored treatment for a customer. It cannot demand or receive directly or indirectly a greater or lesser rate than specified in its tariff.
228 A.2d at 220.
The New York Supreme Court, Appellate Division, in Consolidated Edison Company of New York, Inc. v. Jet Asphalt Corporation, 132 A.D.2d 296, 522 N.Y.S.2d 124 (1987), has similarly held that the defense of estoppel could not be raised to prevent a public utility’s recovery of negligently un-derbilled utility charges, because to do so would violate a statutorily declared public policy interest:
[Cjourts have universally held that the statutorily declared public policy of equal treatment among customers “ ‘super-cedes [sic] the ordinary doctrine of estop-pel, so far as that would interfere with the accomplishment of the dominant purpose of the act. It does not permit that inequality (of rates) to arise indirectly through the application of estoppel, which it was the aim of the act to suppress directly.’”
*377 522 N.Y.S.2d at 128 (cites omitted). The Supreme Court of Florida in Brandon v. Lichty, 133 Fla. 520, 182 So. 897 (1938), also disallowed the defense of estoppel, attempted to be used by a customer against a carrier to bar the latter from recovering the full amount of freight charges reflected in the applicable ICC tariff, notwithstanding the carrier’s agreement to transport the goods in question for less. See also Reid v. Overland Machined Products, 55 Cal.2d 203, 359 P.2d 251, 10 Cal.Rptr. 819 (1961) (an employee’s acceptance of a check tendered by an employer as payment in full of a wage claim could not result in an accord and satisfaction discharging the employer’s statutory obligation to pay all wages conceded to be due); Town of North Bonneville v. Bencor Corporation of America, 32 Wash.App. 144, 646 P.2d 161 (1982) (town’s acceptance of a check tendered as payment in full of a disputed tax claim would not discharge the obligation by accord and satisfaction in that municipal officers are not empowered to compromise or release tax claims except as specifically authorized by law); Chicago and North Western Transportation Company v. Thoreson Food Products, Inc., 71 Wis.2d 143, 238 N.W.2d 69 (1976) (carrier’s acceptance of a check tendered as payment in full by the shipper, although constituting an accord and satisfaction, did not discharge the claim because the accord was not valid under the Interstate Commerce Act).
The provisions of Section 366.03, Florida Statutes, requiring that the rates and charges of all public utilities be fair and reasonable and that no preference or advantage be given to any person or locality have also been iterated in Section 750.202 of the Jacksonville Municipal Code. Thus, the Code precludes the JEA from furnishing free sewerage or water service to any person or instrumentality, and provides also that every user of the city’s water and sewerage system be subject to equal and uniform rates and charges. Clearly, given the expressed public policy declarations of both the Florida Statutes and the Jacksonville Municipal Code, any defense of accord and satisfaction or estoppel has been overridden by legislative pronouncements to the contrary.
The majority’s holding, approving the lower court’s order barring the JEA from recovering accrued undercharges through the February 19, 1985 meter readings, is, in my judgment, not only in conflict with a substantial body of out-of-state case law authority, but in conflict as well with the rule announced by the Third District Court of Appeal in Be Gestión. I would therefore reverse the order entered below in its entirety.