557 So.2d 1357 (1990)
JACKSONVILLE ELECTRIC AUTHORITY, Petitioner,
v.
DRAPER'S EGG AND POULTRY CO., Respondent.
No. 73259.
Supreme Court of Florida.
March 1, 1990.
James L. Harrison, General Counsel, and Steven E. Rohan and Leonard S. Magid, Asst. Counsels, Jacksonville, for petitioner.
Andrew J. Decker, III of Airth, Sellers, Lewis, Decker & Prevatt, Live Oak, for respondent.
SHAW, Justice.
We have for review Jacksonville Electric Authority v. Draper's Egg & Poultry Co., Inc., 531 So.2d 373 (Fla. 1st DCA 1988), based on conflict with Corporation De Gestion Ste-Foy, Inc. v. Florida Power & Light Co., 385 So.2d 124 (Fla. 3d DCA 1980). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash in part the decision of the district court below.
This case presents the following issue: When a utility customer questions the *1358 accuracy of a monthly water bill and subsequently pays the full amount, is the utility barred from billing the customer for later discovered undercharges arising under a separate account? We conclude that it is not.
Draper's Egg and Poultry Company, Inc. (Draper) uses large amounts of water, which it buys from Jacksonville Electric Authority (JEA) under three accounts, numbers five, six, and seven. In December 1984, Draper received a water bill on its number seven account that seemed unusually high. It questioned the amount, and after being told in January 1985 by JEA that the bill included services for a five-month period during which a meter that had been replaced by Draper had been faulty, Draper offered in February to pay the balance over a two-month period in conjunction with the balance due on its other accounts. In the meantime, Draper received an interim bill and asked JEA to clarify its accounts. In March, JEA wrote Draper the following:
Our records currently reflect these balances for your three (3) Water accounts:
61760-02400-0000-7-00-W $25,886.64 61760-02400-0000-6-00-W 4,633.49- 61760-02400-0000-5-00-W 714.42
We are transferring the credit balance of $4,633.49, per your request, on the account located at 2400 McCoy Bv. # 1 to your account listed at 2400 McCoy Bv. The transferring of this credit will reduce the current balance of $25,886.64 to $21,253.15.
Enclosed for your convenience are duplicate bills for the two accounts with debit balances, for a total due of $21,967.57. Once these payments and the transfer of the credit balance has been posted to your account they will be paid in full through the February 19, 1985 meter readings.
Draper substantially paid the balance due on its accounts in March[*] with a check that stated:
Payment in full through February 19, 1985 for all water and sewer charge for Draper's Egg & Poultry Co., Inc. 2400 McCoy Blvd., Jacksonville, Florida.
In April, JEA discovered a separate billing error in account numbers five and six that resulted in a continuing undercharge going back to 1983. It notified Draper of the error in November and billed Draper for $297,303.85 in undercharges. Draper sought a declaratory judgment concerning its rights and JEA counterclaimed for the amount of the bill. The trial court determined that the parties' actions in March constituted an accord and satisfaction, which precluded JEA from collecting on the portion of the undercharge accruing before February 19, 1985, and that JEA's failure to promptly notify Draper of the undercharge estopped JEA from collecting on the portion accruing subsequent to that date. JEA appealed and the district court affirmed as to the earlier accruing portion, finding accord and satisfaction applicable. It reversed as to the later accruing portion, finding estoppel inapplicable in the absence of any reliance on Draper's part upon JEA's tardy notification of undercharge. JEA sought review here, which was granted based upon conflict with De Gestion.
Draper contends that the trial and district courts properly concluded that an accord and satisfaction took place in March that bars JEA from collecting on the undercharge. It was in the minds of the parties, according to Draper, that the March transactions referred to all accounts and all errors arising prior to that time.
An accord is "an agreement for the settlement of some previously existing claim by a substituted performance." 6 A. Corbin, Corbin on Contracts § 1278 (1962). Discharge of a claim by accord and satisfaction means "a discharge by the rendering of some performance different from that which was claimed as due and the acceptance of such performance by the claimant as full satisfaction of his claim." Id. § 1276. It is not a prerequisite to an accord that the creditor's claim be doubtful or in dispute, but where it is, the agreement for substituted performance is "compromise" and the rendering of the performance *1359 is "settlement." Id. § 1278. A key element of both accord and compromise is that the substituted performance be different in content from that claimed due.
The transaction is never called either an accord or a compromise unless the new performance agreed on is in some respect different from that previously claimed by the obligee. If the claim is for the payment of $100, whether disputed or not disputed by the obligor, the new agreement made by them is called neither an accord nor a compromise unless it calls for a performance that differs in some respect from the payment of $100. If the obligor merely promises to pay $100 and the obligee promises to receive that sum in satisfaction, the validity of the new agreement depends almost wholly upon the validity of the previous claim. If for any reason that claim was invalid ab initio, the new agreement is equally invalid. If the previous claim was a valid debt for $100, the obligor's new promise is mere repetition; it is sufficiently supported by the existing debt, but it is neither an accord nor a compromise. It is true that the new promise is itself called a contract and that it may have the effect of recreating a legal duty the enforcement of which has been barred by the statute of limitations or by a discharge in bankruptcy. Also it may operate as a ratification of an obligation that was voidable for infancy or fraud. But even in these cases it is not called either an accord or a compromise, and no new consideration is required for its validity and enforcement.
Id. (footnote omitted).
In the instant case, because the performance rendered by Draper was precisely that claimed due by JEA, no accord and satisfaction or compromise and settlement took place. What occurred was merely an affirmation of the original contract wherein JEA agreed that claims against Draper for water consumption would be extinguished by payment at a stated rate. The issue before us boils down to whether, in the minds of JEA and Draper, the March payment was intended to exitinguish all claims, known and unknown. We believe not.
Draper's initial inquiry in December was prompted by the unusually high bill it received on account number seven, and was essentially restricted to that matter. The ensuing discussion between the parties concerned the accuracy of only that particular account; the subject heading of the letters exchanged by the parties states "Re: Water Service acct. # 61760-02400-0000-7-00-W," which is the designation for account number seven. The other two accounts, numbers five and six, became involved only when Draper requested in February that it be permitted to consolidate the debits and credits in all three accounts and pay the total balance over a two-month period. Accounts numbers five and six are mentioned in JEA's March letter only to provide a consolidated balance on all Draper's water accounts, not to attest to the underlying accuracy of these two accounts, since this was never questioned. Accordingly, we conclude that it was the intent of the parties that Draper's March payment would extinguish JEA's claim only as to the matter under discussion, i.e., the consolidated balance arising from the faulty meter on account number seven and the current billings on accounts numbers five and six. Viewed against this background, it is clear that the consolidated balance agreed to by the parties was not intended to include an as yet undiscovered and undiscussed undercharge.
Draper asserts that JEA should be estopped from seeking payment on that portion of the undercharge accruing after February 19, 1985, because had Draper been notified when JEA discovered the error in April, it could have instituted water-saving measures at that time. We agree with the district court, however, that Draper has failed to show any detrimental reliance upon JEA's failure to notify Draper earlier; Draper presented no proof that it subsequently instituted water-saving measures. Additionally, testimony was presented that Draper was told of the existence of the undercharge, but not the amount, prior to November.
We granted review of the instant case based on conflict with De Gestion, wherein the district court held that neither estoppel *1360 nor accord and satisfaction can be raised as a defense to charges for services rendered but negligently underbilled by a public utility. Because we find neither doctrine applicable here, we need not reach the issue presented in De Gestion.
Based on the foregoing, we quash that portion of the district court opinion barring JEA from collecting on undercharges accruing prior to February 19, 1985, and approve that portion holding Draper liable for subsequent undercharges.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] The March check was in fact $714.42 short, which Draper later paid by separate check.