[No. 29494. Department One. February 19, 1945.]

RAYMON BULMON *et al., Respondents,* v. I. V. BAILEY *et al., Defendants,* HARRY C. HAZEL *et al., Appellants.*[1]

[1]Reported in 156 P. (2d) 231.

*Ernest B. Herald,* for appellants.

*Frederick B. Cohen* and *John E. O'Larey,* for respondents.

GRADY, J.—This action was brought by the respondents against I. V. Bailey and wife and Harry C. Hazel and wife to secure a judgment requiring the defendants Bailey to make available to them two contracts for the sale and purchase of real estate and adjudging that such contracts were in good standing; also adjudging that the defendants Hazel had no right, title, or interest in or to the real estate. A trial before the court resulted in a judgment requiring the defendants Bailey to furnish to respondents duly executed contracts for the sale and purchase of the lands in question, adjudging that any interest the defendants Hazel might have in same was subject to the rights of respondents therein, and ordering respondents to pay to defendants Hazel any taxes and assessments thereon they may have paid.

The defendants Hazel and wife have taken an appeal from the judgment. Nina Bulmon will be referred to as though she were the sole respondent.

The factual situation which we find supported by the evidence is substantially as follows:

On February 20 and on May 5, 1942, Bailey and wife entered into contracts with respondent for the purchase by her of two parcels of real estate. The purchase price was payable in monthly installments. The contracts were in the usual form, each contained a forfeiture clause and the following:

"It is understood and agreed that the grantors will deliver signed and notarized contract of sale to the grantee when the sum of one hundred dollars ($100.00) has been paid on the principal."

The parties, when testifying, were not asked to relate in detail just what agreement they had with reference to an escrow; but their conduct, the exhibits in evidence, the

above-quoted part of the contract, and the reasonable inferences to be drawn from the record leads to the conclusion that they agreed to and did deposit duplicates of the contracts with a third party as an escrow with instructions to give them to respondent when she had paid to the escrow holder on each contract a sufficient number of installments to amount to one hundred dollars of the purchase price. The contracts in the escrow were signed and acknowledged by Bailey and wife, but through some oversight the contract of May 5th was not signed by respondent. We regard this omission as of no importance, as respondent accepted the contract and became bound thereby. The respondent paid to the escrow holder four of the deferred installments on one contract and two on the other one. Only two installments were paid on the due date thereof.

On two occasions, the dates not being given, the vendors wrote and mailed letters to respondent advising her that she was behind in her payments. In the first letter the vendors requested respondent to make the overdue payments, and in the other one the vendors stated they would assume the respondent wanted to give up the property if they did not hear from her.

The respondent testified she did not receive the letters. In November, 1942, no payment having been made since August 1, 1942, respondent communicated with the escrow holder by postal card in which she acknowledged receipt of a letter from it, explaining that she had been ill, stating that she still wanted the lots, and requesting to know how the account stood and the amount of the interest. Her address was given on the postal card. On November 25, 1942, the escrow holder mailed respondent this notation on a card: "Nina Bulmon—No one here seems to know about this." No further demands to comply with the contracts appear to have been made, and no notice of forfeiture of the contracts was ever given. The transaction between the parties remained static until August 18, 1943, when the vendors, without notice to respondent, withdrew the contracts from escrow and conveyed the property to appellants.

The appellants resided on property adjoining that being purchased by respondent from Bailey and wife. At one time appellants offered to purchase the property from respondent, but she declined to sell. The court found, and we think properly, that appellants, when they purchased the property from Bailey and wife, knew of the existence of the contracts with respondent. No bad faith can be imputed to appellants. They no doubt assumed the respondent had abandoned her contracts and the property, and for this there was much justification; but as we shall later point out the legal situation was such that they could only acquire the property subject to the contracts between Bailey and wife and respondent.

Shortly prior to February 1, 1944, respondent went to the office of the escrow holder to ascertain where the contracts were so as to make payment of what was owing on them. She then communicated with Mrs. Bailey by telephone and learned that the property had been sold. On February 1, 1944, the attorney for respondent made an offer to Bailey to pay to him all that was then owing on the contracts on condition that a properly executed real estate contract for the property be furnished. The offer was not accepted. This action followed, and there was paid into court the amounts owing on the contracts up to the time of the trial of the case.

It is the contention of the appellants that the contracts never became enforcible because they were never delivered to the vendee (respondent) and also because there was something remaining to be done by the vendee before they were intended to become effectual, namely, the payment of one hundred dollars on each contract; and the transaction was in effect an option on the part of the vendee to secure contracts of purchase, which option was not exercised and became revocable.

If we could accept the premise of the appellants, their conclusion would follow and the cases they cite would be applicable; but from the facts as outlined above we must find and conclude that there are no elements of an option present.

In order that the arrangement between the parties could have constituted an option, it would have been necessary for Bailey to have granted to respondent the privilege of securing from him within some specified time contracts to purchase the property. The acceptance of the offer thus made would have been at her election, and until she had made such election and accepted the offer made within the time specified there would have been no obligation on her part, and when the time expired the offer would have lapsed. This was not the arrangement made by the parties.

The Baileys and respondent entered into valid and enforcible contracts, duly acknowledged by the former, to sell and purchase two parcels of real estate. They were delivered to a third party as an escrow. The respondent was to make the deferred payments of the purchase price to the escrow holder, and when the payments to be applied on the principal sum reached the sum of one hundred dollars on each contract, that contract was to be given into the possession of the respondent. The contracts were beyond the recall of the vendors, unless by reason of nonperformance by the respondent they were forfeited and terminated by the vendors. In such an event they would be no longer of any force or effect and could be reclaimed by the vendors from the escrow holder.

The contracts, when delivered to the escrow holder, became mutually binding on the parties thereto. There was nothing further to be done by either party to make them effective. The payment of the sum of one hundred dollars was a part of the covenant to pay the purchase price. Physical possession of the vendee's duplicate of each contract was withheld by the escrow holder by agreement of the parties until the sum of one hundred dollars was paid on the purchase price, but this did not prevent the contracts from becoming effective as soon as executed, accepted, and delivered as an escrow. We are convinced that it was the intentions of the parties that they were to become so effective.

Time of payment of the installments of purchase price was made of the essence of the contracts, and if the

vendors had from the beginning insisted upon strict performance they could have forfeited either contract upon the happening of the first default thereof. But they did not do this. They passively granted indulgences to the respondent by permitting payments to be made after they were due and accepting them without protest and by permitting payments to remain unpaid without in any way making known to her that strict performance would be required of her. When such a situation is allowed to develop by a vendor in a contract like those now before us, strict performance as to time of payment is waived and the vendor cannot put the vendee in default or claim a forfeiture without first having given notice of intention so to do with a reasonable time within which the vendee may perform. *Wadham v. McVicar*, 115 Wash. 503, 197 Pac. 616; *Shaw v. Morrison*, 145 Wash. 420, 260 Pac. 666; *Pacific Finance Corp. v. Webster*, 161 Wash. 255, 296 Pac. 809; *Great Western Inv. Co. v. Anderson*, 162 Wash. 58, 297 Pac. 1087; *Franklin v. Gilbert Ice Cream Co.*, 191 Wash. 269, 71 P. (2d) 52.

The indulgences granted by a vendor may take the form of extensions of time within which to make payment, accepting payments after they are due, as in the foregoing cases, or allowing payments to remain unpaid, as in the cases of *Walker v. McMurchie*, 61 Wash. 489, 112 Pac. 500; *Grosgebauer v. Schneider*, 177 Wash. 282, 31 P. (2d) 901.

 Strict performance having been waived, the vendors were not justified in taking the contracts from the escrow holder, nor did such action on their part operate as a forfeiture or affect the rights of respondent.

 The appellants, not being innocent purchasers, acquired no more than their vendors had to sell. The respondent, having paid into court all that was owing on the contracts up to the time of the trial, became entitled to have possession of them.

 The appellants contend that respondent was guilty of laches by reason of the long delay in so performing her contracts as to entitle her to possession of them, especially as against a purchaser from her vendors. But as long as

we recognize the rule of the cases above cited, a vendor is in no position to claim laches on the part of his vendee so long as he continues to grant indulgences to him. The appellants, having acquired no more than the title of their vendors to the property, subject to the respondent's contracts, are in no better position to invoke the doctrine of laches than such vendors. Furthermore, it does not appear from the record that appellants have been prejudiced in any way by the delay in making payments on the contracts.

The judgment is affirmed.

BEALS, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.

