## Richmond

## THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA V. MARCUS J. BLES

April 21, 1978.

Record No. 761642.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Harrison Bush (Randolph A. Sutliff; Warner F. Brundage, Jr.; McCandlish, Lillard, Bauknight, Church & Best,* on brief) for plaintiff in error.

*Royce A. Spence (Lytton H. Gibson; Spence & Ragland,* on brief) for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

The question presented in this appeal is whether a public utility, which incorrectly quotes the cost of service and underbills a customer, is thereby estopped from collecting the undercharges.

The Chesapeake and Potomac Telephone Company of Virginia (C & P) filed a motion for judgment in the trial court against Marcus J. Bles to recover undercharges for telephone service provided Bles from August 19, 1969, to October 1, 1975. Bles filed grounds of defense alleging that he had been informed by C & P that the cost of the service which he desired would not exceed $21 per month, that if he had been accurately informed as to the cost he would not have contracted for it, and that he relied upon the statute of limitations. The case was heard by the trial court, sitting without a jury, on stipulated facts. C & P filed an exhibit showing that charges not subject to the bar of limitations amounted to $1,043.31. By final order entered on August 23, 1976, the trial court, ruling that a substantial portion of the claim was barred by the statute of limitations, and that C & P was estopped from asserting its claim, dismissed with prejudice the motion for judgment. C & P has appealed from this order insofar as the right to recover the sum of $1,043.31 was thereby denied.

In 1969, Bles requested that C & P furnish him local telephone service through the Herndon Exchange rather than through the Leesburg Exchange, which regularly served his residential area, so that he could make calls to the Washington, D. C. metropolitan area without incurring long-distance toll charges. A C & P representative informed Bles that the charge for the requested service would not exceed $21 per month, and the service was initiated. C & P regularly billed Bles for telephone service, but the monthly invoices, which Bles paid, did not include any charges for Foreign Exchange Mileage and

Exchange Line Mileage, a tariff approved by the State Corporation Commission for customers who request local service through central offices other than the ones regularly serving their residential areas. Bles was not aware of the billing error until 1974 when C & P discovered it and sent him an invoice for the undercharges, which he declined to pay. Thereafter, Bles reluctantly paid the monthly invoices, which included the correct charges for his service, until October 1, 1975, when, at his request, the service was discontinued. It was stipulated that Bles would not have ordered the service in 1969 had he been correctly informed of the cost.

■ A public utility is prohibited by Code § 56-234 (Repl. Vol. 1974) [1] from permitting any customer to receive preferential treatment as to cost of service. Thus, in *Massaponax Sand Corp. v. Va. E. & P. Co.*, 166 Va. 405, 186 S.E. 3 (1936), the utility company brought an action against its customer to collect charges for electric services. The customer denied the claim and filed a special plea of setoff, alleging that the utility had agreed to construe its contract in such manner as to reduce its charges by charging on the basis of a low estimated demand, but subsequently insisted upon a contract providing for payment on the basis of measured demand, which made it necessary for the customer to install new motors to reduce the charges. The customer claimed by way of setoff the cost of installing the new motors and the difference between the estimated and the measured demand charges. The trial court rejected the special plea and entered judgment for the utility company for the amount of the unpaid charges. In affirming this judgment, we held the effect of the predecessor statute to Code § 56-234 to be as follows:

---

[1] "**§ 56-234. Duty to furnish adequate service at reasonable and uniform rates.** — It shall be the duty of every public utility to furnish reasonably adequate service and facilities at reasonable and just rates to any person, firm or corporation along its lines desiring same, and to charge uniformly therefor all persons or corporations using such service under like conditions. The charge for such service shall be at the lowest rate applicable for such service in accordance with schedules filed with the Commission pursuant to § 56-236. . . ." (Note: This statute was amended by Acts 1976, c. 290, inapplicable in the present case, to add at the end of the first sentence a provision authorizing, with the approval of the State Corporation Commission, voluntary rate or rate design tests or experiments, or other experiments involving the use of special rates.)

"No public service corporation had any authority, by express contract, or otherwise, to change or vary the schedule of rates and charges approved by the Corporation Commission, so that power would be supplied one member of the public at a greater or less cost than other members of the public similarly situated. The provisions [of] any contract executed by a public service corporation and its subscribers by which the corporation has the option of so construing the contract as to work a discrimination between members of the public in the same class, is against public policy, and is void." *Id.* at 413, 186 S.E. at 7.

This principle also applies, of course, in actions brought by a customer to recover alleged overcharges made by a public utility. In *Coal and Coke Co.* v. *Power Co.*, 151 Va. 52, 144 S.E. 439 (1928), a customer relied upon a contract under which the utility agreed to furnish electric power at a specified rate. Subsequently, an increased rate was charged during Federal government control in 1918, and this rate was continued after termination of government control, pending approval of new rates. The new rates, approved by the State Corporation Commission after investigation, exceeded those charged under the original contract, but we held that the customer was not entitled to any reimbursement for the excess. We stated that where the rates of a public service company have been filed with and approved by the State Corporation Commission and have become effective, any other agreement as to rates becomes nugatory. *Cf. Commonwealth* v. *Shenandoah R. Light & Power Corp.*, 135 Va. 47, 115 S.E. 695 (1923).

Code § 56-234 constitutes a public policy determination that all customers in the same approved rate classification must be charged no more and no less than the rates shown on the schedule applicable to that category of users. Variations in rate schedules applicable to different categories are permissible, but there may be no deviation from approved tariffs within a category.

There is no merit to the contention advanced by Bles that Code § 56-234 does not explicitly prohibit a utility from receiving less compensation than the approved rate, but merely proscribes overcharging. He concedes that the purpose of the statute is to prevent discrimination among utility customers of

the same class. And it is apparent that to permit an undercharge, whether intentionally or inadvertently made, is to grant a preferential rebate to a customer in violation of the statutory mandate.

Under the Interstate Commerce Act, which prohibits rail carriers from deviating from published tariffs, it has long been held that such carriers are required to collect underbillings, regardless of error or mistake in the billing. *Louisville & Nashville R. R.* v. *Maxwell,* 237 U.S. 94, 97 (1915). *To the same effect see National Carloading Corp.* v. *Atchison, T. & S. F. Ry. Co.,* 150 F.2d 210 (9th Cir. 1945); *Standard Rice Co.* v. *Southern Pac. Co.,* 139 F.2d 93 (5th Cir. 1943); Annot., 88 A.L.R.2d 1375. The same rationale has been applied to undercharges made by motor carriers. *W. S. Dickey Clay Manufacturing Company* v. *Cordor,* 310 F.2d 764 (1962), *petition for cert. dismissed,* 373 U.S. 906 (1963); *Butler* v. *Bell Oil & Refining Co.,* 70 Cal. App. 2d 728, 161 P.2d 559 (1945).

Statutes similar to Code § 56-234 have been construed in other states to preclude a customer from successfully defending an action by a public utility company for undercharges resulting from negligent billing. Under a Pennsylvania statute that required an electric utility company to charge only the rates specified in its tariffs, it was held that the utility could not make a special contract with a customer or receive a greater or lesser rate. An action by the utility to collect undercharges for 31 months was held, therefore, not to be subject to defenses of accord and satisfaction, payment, estoppel, or breach of contract, as the only justiciable issue was whether the customer had paid in full for the services furnished. *West Penn Power Co.* v. *Nationwide Mutual Ins. Co.,* 209 Pa. Super. Ct. 509, 228 A.2d 218 (1967), *application for allocatur denied, id.*

A statute in Wisconsin made it unlawful for any public utility to receive more or less than the rates specified in its published schedules. In an action by a public utility to recover for gas service, it was held that the customer could base neither a counterclaim nor a defense of setoff upon negligent underbilling. *Wisconsin P. & L. Co.* v. *Berlin Tanning & Mfg. Co.,* 275 Wis. 554, 83 N.W.2d 147 (1957). *See also Wisconsin P. & L. Co.* v. *Berlin Laundry Co.,* 275 Wis. 562, 83 N.W.2d 152 (1957).

We conclude that the principle of equitable estoppel, applied by the trial court in the present case, is not available as a

defense to a claim of a public utility for undercharges negligently billed to the customer. *See* 13 Williston on Contracts, 584 n. 1 (3d ed. 1970). Counsel for Bles has cited no authority to the contrary, and our research has revealed none. The statutory requirement that public utilities adhere rigidly to rate schedules approved by the State Corporation Commission precludes a customer from interposing the defense of equitable estoppel in an action by a utility to collect the balance of charges negligently omitted in earlier billings. In such actions reliance upon this common law defense has been foreclosed by the special statutory provisions applicable to public service companies which operate subject to regulation and supervision by the State Corporation Commission.

Accordingly, the judgment of the trial court will be reversed, and final judgment will be entered for C & P against Bles in the amount of $1,043.31.

*Reversed and final judgment.*