CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent, v JET ASPHALT CORPORATION, Appellant.

First Department, December 10, 1987

## APPEARANCES OF COUNSEL

*Joseph J. Klem* of counsel *(Ernest J. Williams,* attorney), for respondent.

*Ralph Pernick* of counsel *(Laurence Jeffrey Weingard* with him on the brief; *Hayt, Hayt & Landau,* attorneys), for appellant.

## OPINION OF THE COURT

CARRO, J.

Defendant-appellant, Jet Asphalt Corporation, was engaged in the manufacture of asphalt at a facility in Flushing, New York, until 1984. Desirous of cutting fuel costs, defendant's president wrote to plaintiff Consolidated Edison in November 1979, inquiring about conversion to natural gas and requesting an operating cost estimate. Plaintiff failed to respond with a cost estimate, but assured defendant that conversion to natural gas would result in appreciable monetary savings. In early 1982, defendant converted from wholly oil consumption to a combination of oil and natural gas consumption, and became a customer of plaintiff for natural gas until June 1984, at which point it paid its final bill. Defendant then sold its business to a successor company.

To make the necessary readings for billing purposes, plaintiff had installed an eight-digit gas meter. Since plaintiff's billing system was designed to accept readings of only six digits, the installer masked the first two digits with tape. Upon receiving the first month's gas bill for $42,000, defendant, who had anticipated greater savings requested a verified reading. A "corrected bill" was rendered, charging defendant much less. Upon reviewing the matter, plaintiff's representative also concluded that the meter had been improperly masked and proceeded to mask the first and last digits instead. It was not until 1985 that plaintiff discovered that the original masking was correct and that the erroneous masking had resulted in an underbilling of defendant by 90%.

By this time, defendant had sold its assets and had gone out of business. On October 18, 1985, plaintiff commenced the within action to recover the fuel charges. By notice of motion

dated February 6, 1986, plaintiff moved for summary judgment and dismissal of defendant's defenses and its counterclaim in which defendant argued that plaintiff should be estopped from recovering the underbilling. In its written decision, the court rejected defendant's argument of estoppel, concluded that there were no factual issues to be resolved and awarded plaintiff summary judgment in the amount underbilled, $870,920.47, plus interest calculated from June 29, 1984. The court further stated that defendant could not rely on an internal rule of plaintiff limiting recovery on an underbilling to a one-year period, since that rule did not operate when the customer "knew or reasonably should have known of the problem." On this issue, the court concluded that since "[t]he billings for fuel from March 30, 1982 to June 29, 1984 were ⅒ of what defendants [sic] was previously paying," defendant therefore "knew what was going on." The court also rejected defendant's claim of an accord and satisfaction.

██ Defendant moved for reargument and renewal and to amend its counterclaim to assert a constitutional argument. Defendant, *inter alia*, argued that the court had misconstrued the facts in finding that defendant was billed for one tenth of what it had previously been paying, since defendant had not used gas previously, and in finding incredible defendant's claim that it had no reason to suspect it was being underbilled. Defendant also argued that the judgment entered awarding summary judgment ignored defendant's counterclaim for damages. An order was subsequently entered purporting to deny reargument outright. However, in response to defendant's point that the judgment had not specifically addressed the counterclaim, the court in its order specifically dismissed the counterclaim. In so doing, the court actually granted reargument to that extent and otherwise adhered to its prior judgment and decision. Accordingly, the appeal of the reargument motion is properly before this court, and we hold that the trial court erred in adhering to its grant of plaintiff's motion for summary judgment.

A motion for summary judgment may only be granted when there exist no material and triable issues of fact. On such a motion the court's role is limited to one of issue-finding, not issue-determining. *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404; *Pantote Big Alpha Foods v Schefman,* 121 AD2d 295, 296-297.) Accordingly, it is improper to resolve questions of credibility on a summary judgment motion, unless it clearly appears that the issues are "not genuine, but

feigned." *(Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439, 441.) Moreover, on such a motion the opponent is entitled to all favorable inferences. *(Cruz v American Export Lines,* 67 NY2d 1, 13, *cert denied sub nom. Bussanich v United States Lines,* 476 US 1170; *Pantote Big Alpha Foods v Schefman, supra,* 121 AD2d, at 297.)

The affidavits submitted by defendant in opposition to the motion for summary judgment and on its reargument motion clearly present triable issues of fact as to whether and when defendant knew or reasonably should have known of the underbilling, a factor which determines defendant's liability to pay the underbilling beyond the one-year limitation period provided by plaintiff's internal rules. Defendant points out that it had no experience with gas fuel and never did receive a response by plaintiff on its request for an estimate of how much it was likely to save on converting to gas. Plaintiff merely assured defendant that there would be appreciable savings. Further complicating the issue of whether defendant should have known it was being underbilled on its gas usage was the fact that defendant was using both oil and gas fuel. Furthermore, as time passed and defendant's business began to wind down, there was a decreased use of fuel, thus supporting defendant's expectation of a lower fuel bill.

Not only did the court improperly dismiss these factors as inconsequential, it concluded that defendant knew it was being underbilled on the erroneous assumption that defendant's fuel bill was one tenth of what it had been. There is no evidence that defendant's energy costs were one tenth of what they had been. The one-tenth factor only came into play after the conversion to gas, when defendant was being billed for only one tenth of what it was actually consuming. At that time, defendant had no basis for comparing its current fuel bills, which were based on mixed gas and oil usage, to its prior billings for the exclusive use of oil fuel.

Several factors also undermine the argument that even if defendant had no basis for comparison of the fuel bills, it nevertheless must have known it was being underbilled because of the low bills. When defendant's president received the first gas bill, he expressed surprise at its amount, having expected greater savings, and requested a second meter reading. After reviewing the matter, plaintiff concluded that the first bill was too high and adjusted it to what ended up being an erroneous gas reading of one tenth of the actual amount used. Defendant makes an arguable claim that he was entitled

to rely on the new reading. Further, defendant's passing on to its customers of its savings in fuel bills through its pricing of asphalt and its failure to create a contingency fund prior to the sale of the business support its argument that it had no knowledge of the inaccuracy of the gas bills. Given defendant's arguments on the issue of whether it knew of the underbilling and the issue's materiality to plaintiff's right to seek recovery beyond the one-year period, the court erred in granting plaintiff's motion for summary judgment.

■ We affirm, however, the trial court's rejection of defendant's equitable estoppel defense; its dismissal of the counterclaim for damages; and its denial of defendant's motion, raised in the reargument motion, to amend the counterclaim to incorporate a constitutional due process argument. On appeal, defendant argues that it should be permitted to avail itself of the common-law doctrine of equitable estoppel as a defense to the recovery action and as the basis for a counterclaim for damages. Defendant claims that it reasonably relied, to its detriment, on plaintiff's erroneous gas billings in setting its prices, selling its assets and failing to establish a contingency fund prior to going out of business.

Under Public Service Law § 65 (2) and § 66 (12), a gas corporation must charge and collect full compensation for gas service, as specified by its schedule of rates and charges, and may not directly or indirectly receive from any customer a greater or lesser compensation than it receives from other customers similarly situated. A public service corporation is franchised by the State to serve the public, and it "is not permitted to choose its customers or to discriminate between customers by extending unreasonable conditions and preferences to some, but must serve all on the basis of fairness and equality." *(Brewer v Brooklyn Union Gas Co.,* 33 Misc 2d 1015, 1019.) This statutory obligation of uniformity of rates, which is standard in State and Federal statutes regulating energy and transportation corporations, is predicated on a very strong public policy of protecting the public from possible fraud, corruption or discrimination in rate charges. *(See, Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v Fink,* 250 US 577, 581-582; *Sigal v City of Detroit,* 140 Mich App 39, 362 NW2d 886, 888-889.)

Accordingly, on the issue of whether a party can assert estoppel in pais as a counterclaim for damages or a defense against recovery in a case of negligent underbilling by a utility company, courts have universally held that the statuto-

rily declared public policy of equal treatment among customers " 'supercedes the ordinary doctrine of estoppel, so far as that would interfere with the accomplishment of the dominant purpose of the act. It does not permit that inequality of rates to arise indirectly through the application of estoppel, which it was the aim of the act to suppress directly.' " (*Chicago & Northwestern Ry. Co. v Case Plow Works*, 173 Wis 237, 240, 180 NW 846, 847; *see also, Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v Fink, supra*, 250 US, at 582; *Sigal v City of Detroit*, 140 Mich App 39, 362 NW2d 886, 887-888, *supra; Corporation De Gestion Ste-Foy v Florida Power & Light Co.*, 385 So 2d 124, 126 [Fla App]; *Goddard v Public Serv. Co.*, 43 Colo App 77, 599 P2d 278, 279-280; *Chesapeake & Potomac Tel. Co. v Bles*, 218 Va 1010, 243 SE2d 473; 13 Williston, Contracts § 1595, at 584, n 1 [3d ed 1970].)

With the exception of a 1912 Appellate Term case we believe was wrongly decided, and which in any event must be read in light of the subsequent case law, the few New York decisions on this subject have followed this rule. In 1915, in *Pennsylvania R. R. Co. v Titus* (216 NY 17) the Court of Appeals held that the defense of estoppel could not be raised against a railroad carrier which sought to collect the balance of statutorily set freight charges after it had mistakenly undercharged defendant, since the carrier "could not by its act, intentional or unintentional, relieve the defendant or itself from the compulsory direction of the statutes" (*supra*, at 23). The Appellate Division, Third Department, in a case decided in 1982, *Matter of Capital Props. Co. v Public Serv. Commn.* (91 AD2d 726), also rejected an attempt to assert estoppel against a utility company. In that case, where Consolidated Edison had negligently failed to bill a customer, that court held that estoppel was unavailable as a matter of law, not simply on the facts presented therein, to defeat the utility company's statutory obligation to collect for electricity services in accordance with its rate schedule (*supra*, at 727; *see also, Silverman v Long Is. Water Corp.*, 209 NYS2d 444 [Sup Ct, Nassau County]).

Defendant's reliance on *Queensborough Gas & Elec. Co. v Schoncke* (76 Misc 190 [App Term 2d Dept]) and *Farnsworth v Boro Oil & Gas Co.* (216 NY 40) is misplaced. *Queensborough (supra)* which permitted a defense of estoppel to be raised in an action to recover for negligent underbilling of electricity services, did not refer to the statutory duty of a utility company to collect fuel rates, and, more importantly, was

decided prior to *Pennsylvania R. R. Co. v Titus (supra)* and *Matter of Capital Props. Co. v Public Serv. Commn. (supra)*. These subsequent decisions cast serious doubt on *Queensborough's* authoritativeness, which in any case is not binding on this court. In *Farnsworth v Boro Oil & Gas Co. (supra)* estoppel was permitted as a defense to prevent the utility corporation from denying the binding nature of an agreement it had entered into with a municipality which, among other things, limited the price it could charge to supply gas to its customers. Defendant apparently relies on this case to demonstrate that estoppel may be asserted against a public utility corporation. However, the issue here is not whether estoppel can ever be asserted against a governmental or quasi-governmental entity *(see, Scruggs-Leftwich v Rivercross Tenants' Corp.,* 119 AD2d 88, *lv granted* 69 NY2d 604); rather, the issue is whether estoppel may be asserted by an allegedly aggrieved individual when to do so would violate a statutorily declared public policy interest. Equitable estoppel may not be so used. *(Millington v Rapoport,* 98 AD2d 765, 766; *Warhit Real Estate v Krauss,* 127 Misc 2d 845, 846.)

Neither can defendant make out a due process claim on the basis of its inability to assert the common-law defense of estoppel. Assuming State action, defendant nevertheless fails to present any authority for its claim that assertion of this common-law equitable defense is a property right protected against infringement under the State and Federal Due Process Clauses. Furthermore, since even under the common law estoppel is not available when to apply it would violate public policy *(Millington v Rapoport, supra)*, defendant can not even claim a deprivation of an historically recognized common-law property interest.

The trial court also correctly rejected defendant's claim of an accord and satisfaction based on plaintiff's acceptance, without reservation, of defendant's payment of the final gas bill. Essential elements of an accord and satisfaction are dispute as to the amount due and knowing acceptance by the creditor of a lesser amount. *(Schuttinger v Woodruff,* 259 NY 212, 216.)* Here, when the final bill was rendered, no controversy yet existed as to the amount due such that payment by defendant and acceptance by plaintiff can be deemed an accord and satisfaction *(supra)*.

As a final matter, we note that defendant is correct in identifying one additional issue on which it should be permitted to present argument. In settling the account for underbill-

ing against the successor company, plaintiff waived interest penalties and late charges. This presents a factual question as to whether plaintiff may have violated Public Service Law § 65 (3), prohibiting discrimination between customers, when it sought prejudgment interest against defendant dating back to June 29, 1984, which we note was 11 months before even plaintiff discovered its error.

Accordingly, the order of the Supreme Court, New York County (Burton S. Sherman, J.), entered October 8, 1986, granting reargument to the extent of clarifying that defendant's counterclaim was dismissed and otherwise adhering to the judgment of the same court, entered May 29, 1986, which granted plaintiff summary judgment in the amount of $870,920.47 plus interest, costs and disbursements, for a total of $1,021,239.25, should be unanimously modified, on the law, to the extent of denying plaintiff's motion for summary judgment, without costs. The appeal from the judgment of the same court, entered May 29, 1986, is dismissed as superseded by the appeal from the above order, without costs.

SULLIVAN, J. P., MILONAS, ROSENBERGER and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on October 8, 1986, which granted reargument only to the extent of clarifying the dismissal of defendant's counterclaims and otherwise adhered to its original determination awarding judgment to the plaintiff in the amount of $1,021,239.25, unanimously modified, on the law, to the extent of denying plaintiff's motion for summary judgment, without costs and without disbursements. The appeal from the judgment of said court, entered on May 29, 1986, unanimously dismissed as superseded by the appeal from the aforesaid order, without costs and without disbursements.