[No. 23198–7–I.   Division One.   January 16, 1990.]

HOUSING AUTHORITY OF THE COUNTY OF KING, *Respondent,*
v. NORTHEAST LAKE WASHINGTON SEWER AND
WATER DISTRICT, *Appellant.*

*Peter A. Deming* and *Inslee Best Doezie & Ryder,* for appellant.

*John D. Blankinship* and *Montgomery, Purdue, Blankinship & Austin,* for respondent.

PEKELIS, J.—The Northeast Lake Washington Sewer and Water District (District), a governmental subdivision, appeals from the trial court's order granting summary judgment to the Housing Authority of King County (Housing Authority). The District contends that the court erred in ruling that it could not collect undercharges from the Housing Authority.

I

The Housing Authority owns various housing projects for low–income tenants, including a 16–unit apartment building located in Bothell, Washington. This apartment building was constructed in 1983 on a site previously occupied by a single family dwelling.

In September 1987, an audit of the records of the District revealed that the rate classification for this property had not been changed after construction of the apartment building was completed. As a result of this oversight, the District had undercharged the Housing Authority for sewer and water services for the building from July 1983 to September 1987. The District offered to waive undercharges due from July 1983 to January 1985 if the Housing

Authority agreed to pay the remaining undercharges due in six monthly installments.

The Housing Authority did not dispute that it was undercharged for services provided by the District, but did dispute its obligation to pay the undercharges. Accordingly, it sought a declaratory judgment that it had no obligation to pay the undercharges. The District counterclaimed, seeking payment of all undercharges due from July 1983 to September 1987. The District argued that governing statutes prohibited it from granting preferences or discriminating between customers as to rates charged and that the Housing Authority would receive an unlawful preference if it were allowed to receive services without paying for them.

The parties filed cross motions for summary judgment. The Housing Authority presented evidence that it is required to provide housing to its low–income tenants at cost. It contended that it could not now recover the cost of undercharges from previous tenants and that it was precluded by law from passing on the undercharges to current tenants. Relying in the alternative on equitable estoppel, laches, accord and satisfaction and the doctrine of account stated, the Housing Authority argued that the District was barred from asserting its claim for undercharges.

The trial court denied the District's motion for summary judgment and granted the Housing Authority's motion, ruling that the Housing Authority was not indebted to the District. The District appeals.

## II

The District's principal contention on appeal is that summary judgment in favor of the Housing Authority was improper because the equitable defenses are not available against governmental entities where their application would contravene public policy. The District argues that preventing it from collecting undercharges from the Housing Authority would result in the granting of a discriminatory preference in violation of public policy established by state laws. Moreover, the District claims that the Housing

Authority failed to establish the elements of any of its defenses.

The District relies on two separate statutory schemes to establish that it may not grant preferences or discriminate among similarly situated customers. The first, RCW Title 80, applies to privately owned public utilities, not governmental entities such as the District. RCW Title 80 prohibits rate discrimination:

> No gas company, electrical company or water company shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such service as specified in its schedule filed and in effect at the time . . ..

RCW 80.28.080. RCW Title 80 also prohibits the granting of preferences:

> No gas company, electrical company or water company shall make or grant any undue or unreasonable preference or advantage to any person, corporation, or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

RCW 80.28.090.

■ Unlike RCW Title 80, the statutory scheme applicable to the District, RCW Titles 56 and 57,[1] does not contain express reference to discriminatory rates or preferences. It does, however, provide that sewer and water district commissioners shall fix rates and charges as they deem necessary, "so that uniform charges will be made for the same class of customer or service." RCW 56.16.090; RCW 57.20.020(3). Although less explicit than RCW 80.28-.080 and .090, these statutes embody the same policy against rate discrimination and preferences. We therefore conclude that the statutory scheme applicable to the District prohibits the District from engaging in rate discrimination or granting preferences.

---

[1]Because the District is a merged sewer and water district, it is governed by both RCW Title 56 and RCW Title 57. RCW 57.40.150.

■ Generally, equitable defenses may not be asserted against governmental entities if their application would interfere with the proper exercise of governmental duties or if the act relied upon is ultra vires. *Finch v. Matthews,* 74 Wn.2d 161, 169–71, 443 P.2d 833 (1968); *Federal Way Disposal Co. v. Tacoma,* 11 Wn. App. 894, 896 n.2, 527 P.2d 1387 (1974). Our Supreme Court has also stated that equitable defenses will not apply where their application would "frustrate the purpose of the laws of the United States or thwart its public policy". *Finch,* 74 Wn.2d at 169–70. Washington courts have not yet applied this public policy approach when state laws are involved.

We do not believe that the court in *Finch,* 74 Wn.2d at 169–70, intended to limit a public policy analysis to consideration of federal laws. We note that the determination of whether allowing equitable defenses would interfere with the proper exercise of governmental duties necessarily involves some consideration of public policy. In addition, courts in other jurisdictions have applied a public policy analysis when faced with the question of whether equitable defenses are available in a utility's action to collect undercharges under state laws. *See, e.g., Chesapeake & Potomac Tel. Co. v. Bles,* 218 Va. 1010, 243 S.E.2d 473, 476 (1978); *Consolidated Edison Co. of N.Y., Inc. v. Jet Asphalt Corp.,* 132 A.D.2d 296, 522 N.Y.S.2d 124, 127 (1987). We therefore analyze the issue before us in terms of whether allowing the Housing Authority to raise equitable defense would contravene public policy.

■ Whether the public policy against rate discrimination and preferences expressed in RCW 80.28.080 and .090 and in RCW 56.16.090 and RCW 57.20.020(3) bars the application of equitable defenses in a utility district's claim for undercharges is an issue of first impression in Washington.[2] However, courts in other jurisdictions have addressed

---

[2]Our courts have addressed the analogous issue of whether equitable defenses are available in a common carrier's action to collect undercharges and have held that the public policy against rate discrimination bars the use of equitable

this issue. Construing statutes similar to RCW 80.28.080 and .090, these courts uniformly hold that the public policy against rate discrimination apparent in the statutes bars application of equitable defenses in a utility's claim for inadvertent or negligent undercharges. *Wilson v. Carolina Builders of Wilson, Inc.*, 94 N.C. App. 117, 379 S.E.2d 712, 715 (1989); *Jet Asphalt*, 522 N.Y.S.2d at 127; *Memphis Light, Gas & Water Div. v. Auburndale Sch. Sys.*, 705 S.W.2d 652, 654 (Tenn. 1986); *Corporation de Gestion Ste-Foy, Inc. v. Florida Power & Light Co.*, 385 So. 2d 124, 126 (Fla. Dist. Ct. App. 1980); *Bles*, 243 S.E.2d at 476; *West Penn Power Co. v. Nationwide Mut. Ins. Co.*, 209 Pa. Super. 509, 228 A.2d 218, 220 (1967). One court has construed a statute similar to RCW 56.16.090 and RCW 57.20-.020(3) and concluded that the statute's manifest public policy against rate discrimination barred application of equitable defenses.[3] *Sigal v. Detroit*, 140 Mich. App. 39, 362 N.W.2d 886, 887–88 (1985).

Under the reasoning of these courts, the statutory policy against rate discrimination not only permits but *requires* a utility to collect undercharges. *See Corporation de Gestion Ste-Foy*, 385 So. 2d at 126. This rationale would appear to preclude the Housing Authority from raising equitable defenses in the District's action to collect undercharges.

The Housing Authority contends, however, that allowing the District to collect the undercharges would interfere with its own statutory mandate. The Housing Authority argues

---

defenses. *Burlington Northern R.R. v. Grabber Constr. Supply, Inc.*, 55 Wn. App. 772, 777–78, 780 P.2d 890 (1989) (construing Interstate Commerce Act); *Alaska Marine Trucking v. Carnation Co.*, 30 Wn. App. 144, 148–49, 633 P.2d 105 (1981), cert. denied, 456 U.S. 964, 72 L. Ed. 2d 490, 102 S. Ct. 2045 (1982); *Union Pac. R.R. v. Stadelman Fruit, Inc.*, 13 Wn. App. 824, 826, 537 P.2d 1076 (1975); *Oregon–Washington R.R. & Nav. Co. v. Seattle Grain Co.*, 106 Wash. 1, 4–5, 178 P. 648, 185 P. 583 (1919) (construing state statute).

[3]The statute at issue in that case provided as follows:

"It shall be unlawful for the common council of any city . . . to . . . fix the rates for supplying water to the inhabitants thereof . . . which rules and regulations shall apply equally to all the inhabitants of such city or village." Mich. Stat. Ann. § 5.2514 (Callaghan 1982).

that RCW 35.82.080 requires it to operate at cost, and that RCW 35.82.090 "contemplates" that the cost of utilities shall be passed on to tenants. While we agree that the Housing Authority is required to operate at cost, nothing in these statutes requires it to pass on the cost of utilities to tenants. As the District points out, the Housing Authority may utilize other sources of funds to meet the cost of utilities. Since the utility charges at issue here are costs which the Housing Authority must account for in operating a housing project, we cannot see how allowing the District to collect its undercharges will interfere with the Housing Authority's statutory obligations.

We conclude that the public policy against rate discrimination requires a utility to collect undercharges.[4] Thus, we cannot permit the Housing Authority to thwart this policy by raising equitable defenses.[5]

---

[4]The fact that the District offered to waive part of the undercharges due does not alter our conclusion. We question whether the District had the authority to waive any part of the amount due, since doing so would arguably grant an unlawful preference.

[5]For the first time in a motion for reconsideration, the Housing Authority raised the effect of the Housing Cooperation Law, RCW 35.83. We generally will not consider issues and arguments raised for the first time in a motion for reconsideration. We choose to address the arguments raised by the District in order to lay to rest the belated suggestion that the Housing Cooperation Law, RCW 35.83, requires us to reach a different result.

RCW 35.83.030 provides as follows:
For the purpose of aiding and cooperating in the planning, undertaking, construction or operation of housing projects located within the area in which it is authorized to act, any state public body may upon such terms, with or without consideration, as it may determine:

. . . .

(5) Cause services to be furnished to the housing authority of the character which such state public body is otherwise empowered to furnish[.]

The power granted by this statute can only be exercised
by resolution of the governing body of such state public body adopted by a majority of the members of its governing body present at a meeting of said governing body, which resolution may be adopted at the meeting at which such resolution is introduced.

RCW 35.83.060. Thus, pursuant to the Housing Cooperation Law a utility must take affirmative action before it may grant a preferential rate to a housing authority.

## III

In addition to its equitable defenses, the Housing Authority raises the defenses of accord and satisfaction and the doctrine of account stated. We now consider whether the Housing Authority has established the elements of either of these defenses.

### ACCORD AND SATISFACTION

■ The elements of accord and satisfaction are (1) a bona fide dispute, (2) an agreement to settle that dispute, and (3) performance of the agreement. *Ward v. Richards & Rossano, Inc., P.S.*, 51 Wn. App. 423, 429, 754 P.2d 120, *review denied*, 111 Wn.2d 1019 (1988). When a utility negligently underbills a customer and later seeks to collect undercharges, there is no accord and satisfaction because there was no dispute at the time the bills were rendered and paid. *Jet Asphalt*, 522 N.Y.S.2d at 129; *West Penn Power Co.*, 228 A.2d at 220. The Housing Authority has thus failed to establish this defense.

### ACCOUNT STATED

■ An account stated exists when the parties mutually agree to settle their account by payment of a stated sum. *Plywood Mktg. Assocs. v. Astoria Plywood Corp.*, 16 Wn. App. 566, 574, 558 P.2d 283, 96 A.L.R.3d 1231 (1976), *review denied*, 88 Wn.2d 1014 (1977). A statement of account is prima facie evidence only, and a unilateral mistake of fact may be used to impeach a statement of account. 1A C.J.S. *Account Stated* §§ 14, 34 (1985). Accordingly, a utility customer may not set up an erroneous utility bill as an account stated in an action by the utility to recover the difference. *West Penn Power Co.*, 228 A.2d at 220.

In conclusion, the public policy against rate discrimination bars the Housing Authority from raising equitable

---

Here, the District has not taken the required affirmative action. Absent the required affirmative action, the overarching public policy against rate discrimination must prevail.

defenses to defeat the District's claim for undercharges. The elements of the Housing Authority's remaining defenses are not satisfied. The District is thus entitled to collect the undercharges from the Housing Authority.

Reversed.

COLEMAN, C.J., and FORREST, J., concur.

Review denied at 115 Wn.2d 1004 (1990).