**In re Ivan F. PUGH and Ruth M. Pugh, Debtor.**

**Helen SPENCER, Appellant,**

v.

**Ivan F. PUGH and Ruth M. Pugh, Appellees.**

**BAP No. WW–93–1032–AsRB.**
**Bankruptcy No. 92–06046.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 23, 1993.

Decided Sept. 3, 1993.

Michael J. Cranston, Seattle, WA, for Helen Spencer.

Barry C. Kombol, Black Diamond, WA, for Ivan & Ruth Pugh.

Before ASHLAND, RUSSELL and BOWIE,[1] Bankruptcy Judges.

### *OPINION*

ASHLAND, Bankruptcy Judge:

A real estate contract vendor filed a claim in the debtor's Chapter 13 bankruptcy proceeding. The debtor objected to the claim maintaining that the vendor overestimated the remaining balance on the contract. The bankruptcy court found that the contract balance was $12,826 evidenced by written confirmation from the vendor. We reverse and remand.

### STATEMENT OF FACTS

Appellant Helen Spencer and her late husband, Richard, sold by real estate contract a parcel of property to the debtors Ivan and Ruth Pugh. The contract recited the $25,000 purchase price, acknowledged the $5,000 down payment made by Mrs. Pugh, and called for monthly payments of

---

**1.** Hon. Peter W. Bowie from the Southern District of California sitting by designation.

$250 on the $20,000 balance commencing on June 6, 1986. The interest rate was 8.5% per annum with the interest being deducted from each installment. The remainder of each payment was applied to reduce the principal.

Richard Spencer maintained the monthly handwritten log of the payments made by the Pughs. The log included: (1) the date of payment; (2) the amount paid; (3) the sum applied to interest; (4) the sum applied to principal; (5) the principal balance then due; and (6) the date the interest was paid. Mr. Spencer calculated the contract interest by multiplying the principal outstanding by 30 days, then multiplying by the interest rate (.085), then dividing by 360. This sum constituted the interest which had accrued in the interval since the previous contract payment. The remaining portion of the monthly payment was applied toward principal.

Following the September 1991 payment, the Pughs requested and obtained a written statement of the contract balance. Mr. Spencer indicated that the contract balance was $12,826. Mr. Spencer subsequently died in October 1991 and Mrs. Spencer took over the calculations on the contract implementing the same accounting procedures used by her husband.

The Pughs subsequently filed a Chapter 13 bankruptcy petition in July 1992. Helen Spencer filed a claim in the Pugh's bankruptcy proceeding claiming that the contract with the Pughs: (1) had a balance of $12,608 as of September 1992; (2) was $2,753 in arrears; and (3) that the debtors owed $2,250 in legal fees and $265 in costs. The Pughs objected to Mrs. Spencer's claim maintaining that the balance as of September 1991 was $12,826. Mrs. Spencer explained the discrepancy stating that she and her husband erroneously calculated the interest deduction and remaining balance.

The bankruptcy court found that the real estate contract balance was in accordance with the $12,826 figure reflected in the September 21, 1991 letter from Mr. Spencer. In addition, the bankruptcy court ordered the debtor to make double payments under the plan plus an additional $500 payment attributable to interest until the contract was brought current. Finally, the bankruptcy court reduced Mrs. Spencer's claim for attorney fees and costs from $2,490 to $750.

Mrs. Spencer requested findings of fact and conclusions of law from the bankruptcy court, but the court signed the debtors' order without findings and conclusions. This appeal followed.

## STATEMENT OF THE ISSUES

Whether the bankruptcy court correctly valued the claim of a secured creditor.

Whether the bankruptcy court abused its discretion reducing a secured creditor's claim for attorney fees and costs of approximately $2,490 to $750.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact with respect to claim valuation for clear error. *In re Midway Partners*, 995 F.2d 490, 493 (4th Cir.1993); Federal Rule of Bankruptcy Procedure 8013. We review any related legal determinations with respect to the valuation de novo. *Midway*, 995 F.2d at 493. A bankruptcy court's award of attorney's fees will not be disturbed on appeal absent an abuse of discretion or an erroneous application of the law. *In re Riverside–Linden Inv. Co.*, 945 F.2d 320, 322 (9th Cir.1991); *In re Travel Headquarters, Inc.*, 140 B.R. 260, 261 (9th Cir. BAP 1992).

## DISCUSSION

### A. CLAIMS EVALUATION

Section 1305 of the Bankruptcy Code states that a claim filed in a Chapter 13 case "shall be allowed or disallowed under § 502 as are all other claims...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 427–428 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6383; 11 U.S.C. § 1305. Section 502(a) states that "[a] claim of interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). If a party in interest objects to a

claim, the bankruptcy court shall hold a hearing in order to determine the amount of the claim. 11 U.S.C. § 502(b).

■■■ A proof of claim executed and filed constitutes prima facie evidence of the validity and amount of the claim. Federal Rule of Bankruptcy Procedure 3001(f); *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 Lawrence P. King, *Collier on Bankruptcy* § 502.02, at 502–22 (15th ed. 1991)). After an objection is raised, the objector bears the burden of going forward to produce evidence sufficient to negate the prima facie validity of the filed claim. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir.1992). If the objector produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by a preponderance of the evidence that the claim deserves to share in the distribution of the debtor's assets. *Allegheny*, 954 F.2d at 174; *Holm*, 931 F.2d at 623; 3 Lawrence P. King, *Collier on Bankruptcy* § 502.02, at 502–22 (15th ed. 1993).

The appellant Mrs. Spencer filed a proof of claim stating that the real estate contract with the appellee Pughs: (1) had a balance of $12,608 as of September 1992; (2) was $2,753 in arrears; and (3) that the debtors owed $2,490 in fees and costs. The Pughs objected to Mrs. Spencer's claim calculation offering a letter written by Mr. Spencer in September 1991. The letter stated that the outstanding balance was $12,826.

The bankruptcy court held a hearing and sustained the Pughs' objection valuing Mrs. Spencer's claim at $12,826 plus an additional $500 attributable to past interest. Although the bankruptcy court did not enter specific findings, the transcript from the hearing indicates that the court based its decision upon the theory of "account stated." The bankruptcy court stated that:

> [i]t seems to me that the account is as stated by Mr. Spencer, but it also seems to me that, given the situation, that things need to be brought to a level where the interest, as he calculates it,

and the principal payments are all brought current. And I don't know how to figure that out.

(E.R. at 85–11/17). We do not agree with the bankruptcy court's determination that the September 1991 letter from Mr. Spencer established an "account stated."

■■■ The validity of a creditor's claim is determined by rules of state law. *Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991); *In re Johnson*, 756 F.2d 738, 741 (9th Cir.) *cert. den.*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). The real estate contract in this case deals with real property located in the State of Washington. Accordingly, Washington law is applied to determine Mrs. Spencer's claim.

■■■ "An account stated exists when the parties mutually agree to settle their account by payment of a stated sum." *Housing Auth. v. Northeast Lake Washington Sewer and Water Dist.*, 56 Wash.App. 589, 596, 784 P.2d 1284, 1288 (Ct.App.), *review den.*, 115 Wash.2d 1004, 795 P.2d 1156 (1990). "A statement of account is prima facie evidence only, and a unilateral mistake of fact may be used to impeach a statement of account." *Housing Auth.*, 56 Wash.App. at 596, 784 P.2d at 1288 (citing 1A C.J.S. *Account Stated* §§ 14, 34 (1985)). A party may not impeach the evidence of an account stated if the elements of an estoppel are present. 1 Am.Jur.2d, *Accounts and Accounting* § 35 (1962 & 1993 Supp.). We have not found any evidence in the record that indicates Mrs. Spencer is estopped from impeaching the prima facie evidence found in the letter from Mr. Spencer.

Mrs. Spencer maintains that the mistaken calculation of the interest due impeaches the account balance reflected in the September 1991 letter. Prior to his death in October 1991, Mr. Spencer adhered to a specific procedure for calculating all the interest due on the diminishing principal. He calculated the interest accrued by multiplying the principal outstanding by 30 days, then multiplying by the interest rate (.085), then dividing by 360. The resulting

sum was the interest which had accrued in the interval since the previous contract payment. The remaining portion of the monthly payment was applied toward principal.

■ This procedure accurately accounted for the interest accumulating as long as the payments were made on the 6th day of each month. However, if the payments were made a few days early or a few days late, the interest computation changed. The interest provision in the real estate contract states that the:

> purchaser further agrees to pay interest on the diminishing balance of said purchase price at the rate of—8½—per cent per annum from the 6th day of October, 1986, which interest shall be deducted from each installment payment and the balance of each payment applied in reduction of principal.

(E.R. at 27). The plain language of this provision states that interest shall be paid on the diminishing balance. It follows that if a payment is made early or late the time period computation will fluctuate depending upon the number of days that have elapsed since the last payment was received. It will not be fixed at the 30 day interval used by Mr. and Mrs. Spencer in their original calculation of interest. "The errors to which an account stated may be impeached may relate to mathematical inaccuracies or to inaccuracies in the computation of interest. It is not necessary that the mistake be a mutual mistake." 1 Am. Jur.2d, *Accounts and Accounting* § 35 (1962 & 1993 Supp.); *see also, Housing Auth.*, 56 Wash.App. at 590, 784 P.2d at 1288 (unilateral mistake of fact may be used to impeach a statement of account).

The Spencers kept a detailed log of the date each payment was received from the Pughs. Mrs. Spencer used this data to compute an accurate assessment of the interest due in filing her proof of claim. We find that the bankruptcy court erred when it concluded that the letter from Mr. Spencer to the Pughs constituted an account stated. Mrs. Spencer impeached the prima facie validity of the September 1991 letter by demonstrating that she and her husband incorrectly computed the interest. Accordingly, we remand to the bankruptcy court to enter findings consistent with Mrs. Spencer's determination of the outstanding claim. (*See,* E.R. at 33).

■ The Pughs maintain that the Spencers simply forgave or deferred an accurate interest calculation, and therefore they waived their right to enforce the past due interest. The determination of whether the Spencers waived their right to an accurate interest calculation involves fact-finding. The bankruptcy court did not enter findings with respect to waiver and we have not been able to find any reference to it in the transcript. As an appellate tribunal we are forbidden to make factual findings. *In re Santos,* 112 B.R. 1001, 1008 (9th Cir. BAP 1990); *see also, In re Bradford,* 112 B.R. 347, 352 (9th Cir. BAP 1990). It follows that we are unable to address the waiver issue in this appeal.

■ The Washington Supreme Court has defined the doctrine of waiver in the following manner:

> [w]aiver is the intentional relinquishment of a known right. It is necessary that the person against whom waiver is claimed have intended to relinquish the right, advantage, or benefit and his action must be inconsistent with any other intent than to waive it. Further, to constitute a waiver, other than by express agreement, there must be unequivocal acts or conduct evincing an intent to waive. Intent cannot be inferred from doubtful or ambiguous factors.

*Wagner v. Wagner,* 95 Wash.2d 94, 102, 621 P.2d 1279, 1283 (1980) (citations omitted). The evidence in the record does not establish that the Spencers intended to relinquish a known right. Although Mr. Spencer neglected to accurately record the interest due on the diminishing balance, there is no indication that he intended to permanently waive the right to collect the interest at the end of the contract. Similarly, the September 1991 letter stating a current balance of $12,826 does not indicate that Mr. Spencer intended to waive the

interest. The letter merely states that the balance was $12,826.

Finally, the Pughs also ask us to apply the rationale of *Bulmon v. Bailey*, 22 Wash.2d 372, 156 P.2d 231 (1945), to the facts of this case. In *Bulmon*, the time of payment of the installment purchase price was made the essence of the contract. However, the sellers did not enforce this provision. The purchasers were permitted to make the payments after they were due. The *Bulmon* court held that "[w]hen such a situation is allowed to develop by the vendor ... strict performance as to time of payment is waived and the vendor cannot put the vendee in default without notice...." *Bulmon*, 22 Wash.2d at 376, 156 P.2d at 233.

The holding in *Bulmon* is distinguishable from the facts in this case. *Bulmon* dealt with the enforcement of a "time is of the essence" provision in a contract. Here, we are presented with an interest calculation provision. Although we could apply the underlying theory in *Bulmon* to the facts in this case, we decline to do so within the context of interest calculations.

**B. ATTORNEY FEES**

Mrs. Spencer maintains that the bankruptcy court abused its discretion in reducing the attorney fees ($2225) and costs ($265) from $2490 to $750. This panel will not reverse a bankruptcy court's discretionary decision unless we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached after weighing all of the relevant factors. *Travel Headquarters*, 140 B.R. at 261.

The real estate contract provides for the payment of attorney fees in the event that the seller brings a suit to enforce the terms of the contract. We are not prepared to reverse the bankruptcy court's fee determination as an abuse of discretion. A substantial reduction in fees requires a reviewable basis in order to make an accurate determination. The bankruptcy court did not enter findings with respect to attorney fees and the transcript does not indicate the basis for the

court's significant reduction in fees. Accordingly, we remand the issue of attorney fees to the bankruptcy court to make additional findings indicating the basis for this reduction.

## CONCLUSION

The bankruptcy court erred when it concluded that a letter, identifying the balance on a real estate contract, constituted an account stated. Although the letter constituted prima facie evidence of a sum certain, Mrs. Spencer rebutted this evidence by establishing a unilateral mistake: the incorrect application of the interest due on the account. We reverse and remand for additional findings consistent with the interest analysis prepared by Mrs. Spencer. Similarly, we remand to the bankruptcy court to enter findings with respect to the determination of attorney fees.

RUSSELL, Bankruptcy Judge, dissenting:

I respectfully dissent.

It seems to me that the trial court's determination that the September 21, 1991 letter supports the finding of an "account stated." I do not believe that the finding is clearly erroneous. There is absolutely no evidence of a "mistake" by any "party" to the transaction. Although the amount of interest could have been calculated differently, there is no evidence of a mistake.

What we do have is the attorney for claimant attempting to rewrite history by recalculating the interest due. Mrs. Spencer never testified in person or by way of declaration that she or her late husband made any mistake. The majority's holding that there is no evidence of any waiver of the right to any recalculation of the interest is not supported by the record. The actual and consistent conduct of the claimant, over a period of years, speaks much louder than a recalculation years later by an attorney who had nothing to do with the transaction.

As to the attorney's fees and costs, I do not believe that the trial court abused its

discretion by reducing the requested fees and costs from $2490.00 to $750.00. Claimant's basis for the request for attorney's fees and costs is ¶ 11 of the Real Estate Contract which provides:

(11) Upon seller's election to bring suit to enforce any covenant of this contract, including suit to collect any payment required hereunder, the purchaser agrees to pay a reasonable sum as attorney's fees and all costs and expenses in connection with such suit, which sums shall be included in any judgment or decree entered in such suit.

If the seller shall bring suit to procure an adjudication of the termination of the purchaser's rights hereunder, and judgment is so entered, the purchaser agrees to pay a reasonable sum as attorney's fees and all costs and expenses in connection with such suit, and also the reasonable cost of searching records to determine the condition of title at the date such suit is commenced, which sums shall be included in any judgment or decree entered in such suit.

(Real Estate Contract, Appellant's Excerpt of Record, at A–28)

Most of the fees and costs were clearly not for "sellers election to bring about suit" (see Appellant's Excerpt of Record, at A–4). It is clear that the request was excessive and not compensable under the above quoted ¶ 11. Some obvious examples are:

(1) 09/01/92 Attend meeting of creditors, 2.00 (hours);

(2) 08/07/92 Review Chapter 13 plan requirements; telephone call with Richard Ralston; 1.50 (hours);

(3) 08/05/92 Review letter from Pugh's attorney; review bankruptcy code; 1.50 (hours);

(4) 05/03/92 Review file; calculate arrearage; 4.30 (hours)

Appellant's Excerpt of Record, at A–3, A–4.

I would therefore affirm the decision of the trial court.